**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANAN CELEBI,<br><br>        Plaintiff,<br><br>vs.<br><br>IGM BIOSCIENCES, INC., FELIX J. BAKER, M. KATHLEEN BEHRENS, JULIE HAMBLETON, MARY BETH HARLER, MICHAEL LEE, WILLIAM STROHL, ELIZABETH H.Z. THOMPSON, CHRISTINA TENG TOPSOE, and JAKOB HALDOR TOPSOE,<br><br>        Defendants. | Case No.: 5:25-cv-06108<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Canan Celebi ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against IGM Biosciences, Inc. ("IGM" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual

Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Concentra Biosciences, LLC ("Parent") through a wholly owned subsidiary, Concentra Merger Sub V, Inc. ("Merger Sub," and together with Parent, "Concentra") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a July 1, 2025, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the transaction, Concentra will acquire IGM for $1.247 in cash per share of IGM Biosciences common stock, plus one non-tradeable contingent value right ("CVR"), which represents the right to receive: (i) 100% of the closing net cash of IGM Biosciences in excess of $82.0 million; and (ii) 80% of any net proceeds received within one year following closing from any disposition of certain of IGM Biosciences' product candidates and intellectual property that occurs within one year following closing.

3. Thereafter, on July 16, 2025, IGM filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits.

5. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for IGM, provided by IGM to the Company's financial advisors Houlihan Lokey Capital, Inc. ("Houlihan Lokey"); and (c) the data and inputs underlying the financial valuation analyses, that purport to support the fairness

opinion by Houlihan Lokey, and provided to the Company, and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7. Plaintiff is a resident of France and is a IGM stockholder.

8. Defendant IGM, a biotechnology company, develops Immunoglobulin M antibodies for the treatment of cancer and autoimmune and inflammatory diseases. The Company is incorporated in the State of Delaware, has its principal executive offices located at 325 East Middlefield Road, Mountain View, CA 94043, and its shares trade on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "IGMS."

9. Defendant Felix J. Baker ("Baker") has been a Director of the Company Board at all relevant times.

10. Defendant M. Kathleen Behrens ("Behrens") has been a Director of the Company at all relevant times.

11. Defendant Julie Hambleton ("Hambleton") has been a Director of the Company at all relevant times.

12. Defendant Mary Beth Harler ("Harler") has been a Director of the Company at all relevant times. In addition, Defendant Harler serves as the Company's Chief Executive Officer ("CEO").

13. Defendant Michael Lee ("Lee") has been a Director of the Company at all relevant times.

14. Defendant William Strohl ("Strohl") has been a Director of the Company at all relevant times.

15. Defendant Elizabeth H.Z. Thompson ("Thompson") has been a Director of the Company at all relevant times.

16. Defendant Christina Teng Topsoe ("Topsoe") has been a director of the Company at all relevant times.

17. Defendant Jakob Haldor Topsoe ("Topsoe") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 9-17 are collectively referred to as the "Individual Defendants."

19. Non-Party Parent is a Delaware Limited Liability Company.

20. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

**SUBSTANTIVE ALLEGATIONS**

*Company Background*

24. IGM, a biotechnology company, develops Immunoglobulin M antibodies for the treatment of cancer and autoimmune and inflammatory diseases.

*The Flawed Sales Process*

25. As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

26. The Recommendation Statement specifically states that IGM provided certain financial information for IGM to Houlihan Lokey for its financial analyses, yet the Recommendation Statement fails to disclose said financial information.

27. Additionally, the Recommendation Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Concentra, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Recommendation Statement, if so in all specific manners.

28. The Recommendation Statement fails to provide complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

29. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

30. On July 1, 2025, IGM issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> Mountainview, Calif. July 1, 2025 – IGM Biosciences, Inc. (Nasdaq: IGMS), a biotechnology company that has focused on developing engineered IgM-based therapeutic antibodies, today announced that it has entered into a definitive merger agreement (the "Merger Agreement") with Concentra Biosciences, LLC ("Concentra"), whereby Concentra will acquire IGM Biosciences for $1.247 in cash per share of IGM Biosciences common stock ("Common Stock"), plus one non-tradeable contingent value right ("CVR"), which represents the right to receive: (i) 100% of the closing net cash of IGM Biosciences in excess of $82.0 million; and (ii) 80% of any net proceeds received within one year following closing from any disposition of certain of IGM Biosciences' product candidates and

intellectual property that occurs within one year following closing, each pursuant to a contingent value rights agreement (the "CVR Agreement").

The IGM Biosciences Board of Directors has unanimously determined that the acquisition by Concentra is in the best interests of all IGM Biosciences stockholders and has approved the Merger Agreement and related transactions.

Pursuant and subject to the terms of the Merger Agreement, Concentra will commence a tender offer (the "Offer") by July 16, 2025 to acquire all outstanding shares of Common Stock. Closing of the Offer is subject to certain conditions, including the tender of voting Common Stock representing at least a majority of the total number of outstanding shares of voting Common Stock, the availability of at least $82.0 million of cash (net of transaction costs and other liabilities at closing), and other customary closing conditions. The merger transaction is expected to close in August 2025.

*Potential Conflicts of Interest*

31.  The breakdown of the benefits of the deal indicates that Company insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of IGM.

32.  Company insiders currently own large, illiquid portions of Company stock, which will be converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name of Executive Officer or Director | Non-Voting Common Stock (#) | Voting Common Stock (#)[1] | Cash Consideration for Shares ($) |
|---|---|---|---|
| Mary Beth Harler, M.D. | — | 25,131 | 31,338.36 |
| Misbah Tahir | — | 28,752 | 35,853.74 |
| Lisa L. Decker, Ph.D. | — | 22,811 | 28,445.32 |
| Michael Lee[2] | — | 11,884 | 14,819.35 |
| Kathleen M. Behrens, Ph.D. | — | 411,064[3] | 512,596.81 |
| Julie Hambleton, M.D. | — | 2,000 | 2,494.00 |
| Christina Teng Topsøe[4] | 5,044,295 | 10,475,347 | 19,352,993.57 |
| Jakob Haldor Topsøe[5] | 5,044,295 | 10,491,448 | 19,373,071.52 |
| Felix J. Baker, Ph.D. | 10,720,924 | 4,095,257 | 18,475,777.71 |
| William Strohl, Ph.D. | — | 62,500[6] | 77,937.50 |
| Elizabeth Thompson, Ph.D. | — | 6,502 | 8,107.99 |

33.  Company insiders currently own illiquid portions of Company RSUs some of

which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. The Recommendation Statement provides the following but does not account for the merger consideration each of these amounts will be exchanged for upon the consummation of the Proposed Transaction:

| Name of Executive Officer or Director | Number of IGM Unvested RSUs (#) | Cash Consideration for IGM Unvested RSUs ($) |
|---|---|---|
| Mary Beth Harler, M.D. | 313,050 | 390,373.35 |
| Misbah Tahir | 150,050 | 187,112.35 |
| Lisa L. Decker, Ph.D. | 49,767 | 62,059.45 |
| Michael Lee | — | — |
| Kathleen M. Behrens, Ph.D. | — | — |
| Julie Hambleton, M.D. | — | — |
| Christina Teng Topsøe | — | — |
| Jakob Haldor Topsøe | — | — |
| Felix J. Baker, Ph.D. | — | — |
| William Strohl, Ph.D. | 62,500 | 77,937.50 |
| Elizabeth Thompson, Ph.D. | — | — |

34.   In addition, employment agreements with certain IGM executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

| Name | Cash ($) (1) | Equity ($) (2) | Total ($) |
|---|---|---|---|
| Mary Beth Harler, M.D. | 1,842,982 | 390,373 | 2,233,355 |
| Misbah Tahir | 947,654 | 187,112 | 1,134,766 |
| Lisa L. Decker, Ph.D. | 813,238 | 62,059 | 875,297 |
| Fred Schwarzer | 469,950 | 68,878 | 538,828 |
| Bruce Keyt, Ph.D. | 241,434 | 65,671 | 307,105 |
| Chris H. Takimoto, M.D. Ph.D., F.A.C.P. | — | — | — |

| Name | Salary or Consulting Fee ($) | Bonus ($) | COBRA Payment ($) | Total ($) |
|---|---|---|---|---|
| Mary Beth Harler, M.D. | 1,001,018 | 796,476 | 45,488 | 1,842,982 |
| Misbah Tahir | 523,663 | 372,324 | 51,667 | 947,654 |
| Lisa L. Decker, Ph.D. | 486,304 | 307,344 | 19,590 | 813,238 |
| Fred Schwarzer | 420,450 | — | 49,500 | 469,950 |
| Bruce Keyt, Ph.D. | 191,934 | — | 49,500 | 241,434 |

35. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment, if any, which took place during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

36. Thus, while the Proposed Transaction is not in the best interests of IGM, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Recommendation Statement**

37. The IGM Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38. The Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

    a. Why the Recommendation Statement fails to provide the IGM financial information that was provided to Houlihan Lokey for its financial analyses;

    b. Whether the terms of any confidentiality agreements entered during the sales process between Company on the one hand, and any other third party (including Concentra), if any, differed from one another, and if so, in all specific manners; and

    c. Communications regarding post-transaction employment during the negotiation of the underlying transaction.

*Omissions and/or Material Misrepresentations Concerning IGM's Management Liquidation Analysis*

39. The Recommendation Statement fails to provide financial information for IGM provided by IGM management.

40. Notably, the Recommendation Statement specifically states that in connection with its opinion, Houlihan Lokey reviewed: "certain information relating to the historical, current and future operations, financial condition and prospects of the Company made available to Houlihan Lokey by the Company, including a liquidation analysis prepared by Company management."

41. The Recommendation Statement, therefore, should have, but fails to provide, certain financial information for IGM that may have been created in connection with the Proposed Transaction. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

42. The Recommendation Statement fails to disclose any Company prepared financial information or projections despite the Recommendation Statement stating that the Company provided IGM provided said projections to Houlihan Lokey.

43. This information is necessary to provide Plaintiff in her capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

44. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Houlihan Lokey's financial analyses, or make an informed decision whether to tender her shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the IGM Management Liquidation Analysis*

45. The Recommendation Statement fails to provide material information concerning certain line items for IGM Management Dissolution Analysis provided by IGM management to the Board and Houlihan Lokey and relied upon by Houlihan Lokey in its fairness opinion.

46. With respect to the *Liquidation Analysis,* the Recommendation Statement fails to disclose:

   a. Cash, Cash Equivalents and Marketable Securities, including the inputs, metrics, and assumptions used to determine same;

   b. Prepaid Expenses, including the inputs, metrics, and assumptions used to determine same;

   c. Property and Equipment, Net, including the inputs, metrics, and assumptions used to determine same;

   d. Operating Lease Right-of-Use-Assets, including the inputs, metrics, and assumptions used to determine same;

   e. Other Assets, including the inputs, metrics, and assumptions used to determine same;

   f. Intellectual Property, including the inputs, metrics, and assumptions used to determine same;

   g. Interest Income, including the inputs, metrics, and assumptions used to determine same;

   h. Accounts Payable, including the inputs, metrics, and assumptions used to determine same;

   i. Total Accrued Expenses, including the inputs, metrics, and assumptions used to determine same;

   j. Total Operating Lease Liability, including the inputs, metrics, and assumptions used to determine same; and

      a. Total Deferred Revenue, including the inputs, metrics, and assumptions used to determine same.

47. This information is necessary to provide the Plaintiff, in her capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan Lokey*

48. In the Recommendation Statement, Houlihan Lokey describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49. With respect to the *Liquidation Analysis*, the Recommendation Statement fails to disclose the following:

      a. The inputs, metrics, and assumptions used to determine the book value of the Company, to be $112.5 million;

      b. The inputs, metrics, and assumptions used to determine the total winddown costs, inclusive of a holdback amount, of $46.1 million to $51.9 million;

      c. The inputs, metrics, and assumptions used to determine reference range of net cash available for initial distribution of $60.6 million to $66.4 million; and

      d. The inputs, metrics, and assumptions used to determine the net cash available for distribution including the holdback amount of $72.0 million to $76.3 million.

50. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender her shares in favor of the Proposed Transaction.

51. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value

and serves her interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

52. Plaintiff repeats all previous allegations as if set forth in full herein.

53. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

54. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

55. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

56. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

57. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

58. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to tender her shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

59. Plaintiff has no adequate remedy at law.

**SECOND COUNT**

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**(Against all Defendants)**

60. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

61. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

62. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

63. SEC Rule 14d-9 requires a Company's directors to furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

64. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

65. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to tender her shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

66. Plaintiff has no adequate remedy at law.

## THIRD COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

67. Plaintiff repeats all previous allegations as if set forth in full herein.

68. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

69. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of IGM's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result,

the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

71.     The Individual Defendants acted as controlling persons of IGM within the meaning of Section 20(a) of the Exchange Act.  Because of their position with the Company, the Individual Defendants had the power and authority to cause IGM to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled IGM and all of its employees.  As alleged above, IGM is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.  Enjoining the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 21, 2025

**BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Blvd., Ste. 300
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*